IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:21-CR-0004 |
| | ) | |
| JORDIN ALEXANDER MELGAR SALMERON | ) | |
| | ) | |
| Defendant. | ) | |

## JORDIN MELGAR'S SENTENCING MEMORANDUM

### INTRODUCTION

On May 17, 2021, pursuant to a written Plea Agreement, Jordin Alexander Melgar Salmeron pled guilty to Count Three of Indictment 3:21-CR-0004, charging him with possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. §§5861(d) and 5871. For the reasons argued herein, a sentence of 24 months incarceration, the low end of the advisory guideline range, is sufficient but not greater than necessary to address the goals of sentencing.

### ARGUMENT

During his childhood, Mr. Melgar saw things that no child should see and experienced trauma that left a permanent mark. He was abandoned by his biological father by the age of two. He witnessed his mother's abusive boyfriend shoot her with a gun. He was beaten up by gang members. He lived in poverty in a gang-infested neighborhood in El Salvador. In short, he had multiple "adverse childhood experiences" (ACE). The Centers for Disease Control recognizes that

1

ACEs can have lasting, negative effects on health and well-being, and life opportunities, that follow an individual into adulthood.  *See* Preventing Adverse Childhood Experiences, Centers for Disease Control, available at https://www.cdc.gov/violenceprevention/aces/fastfact.html (last accessed September 26, 2021).  ACEs are linked to chronic health problems, mental illness, and substance use problems in adulthood.  *Id.*  It is also "clear that adverse childhood experiences have a profound, proportionate, and long-last effect on emotional state." Vincent J. Felitti & Robert F. Anda, *The Relationship of Adverse Childhood Experiences to Adult Medical Disease, Psychiatric Disorders, and Sexual Behavior: Implications for Healthcare* 7, in *The Hidden Epidemic: The Impact of Early Life Trauma* (2009) (R. Lanius and E. Vermetten, eds.),

Notwithstanding these initial disadvantages, however, and against the odds, Mr. Melgar has demonstrated over the last decade that he did not let his tortured past determine his future.  He married in 2012. He is a family man, a devoted father to his four children, a husband, and a provider who was gainfully employed until his instant arrest.  Mr. Melgar has worked hard to provide his children the things he did not have growing up – food, shelter, stability, safety.  Mr. Melgar is distraught that his conduct has jeopardized his children's well-being.  He is eager to finish whatever sentence this Court imposes, put this conviction behind him, address any outstanding issues[1] and, unlike his own father who abandoned him,

---

[1] As is detailed in Mr. Melgar's Objections to his Presentence Investigation Report, ECF #47, with respect to PSIR ¶¶ 30 and 31, Mr. Melgar denies the allegations in the alleged charges and intends to fight them if he is returned to El Salvador.

2

continue to be a loving father and provider to his children and a husband to his wife. Mr. Melgar respectfully submits that a sentence of imprisonment of 24 months is a fair and reasonable sentence.

**Background and Offense Conduct**

As detailed in the Presentence Investigation Report (PSIR), Mr. Melgar was subjected at an early age to adverse circumstances that would have permanently broken many individuals. He was born in San Miguel, El Salvador, and at age 2 was abandoned by his father. PSIR, ¶ 33. Adding to the loss of his father, Mr. Melgar lived a life he described as "not a good life." PSIR ¶ 34. He lived in poverty and did not have enough food or clothing. *Id.* He was exposed to violence first-hand when he witnessed his mother first routinely abused and later shot by her abusive boyfriend. PSIR ¶¶ 34 and 38. Mr. Melgar himself was physically attacked by a neighborhood gang when he was only 13 years old. These traumatic events – particularly witnessing the attempted murder of his mother – led to post-traumatic stress disorder and his need for counseling. PSIR ¶ 38. Soon after these difficult events, Mr. Melgar came to the United States for a "better life." PSIR, ¶ 34.

Mr. Melgar married in 2012, and he and his wife and children have been living in Virginia, where has worked for the last five years. The present crime was a crime of opportunity. Mr. Melgar reports he found the firearm and decided to keep it. PSIR ¶¶ 34. He did not use the firearm. He did not possess it in connection with any other offenses, and he admitted his involvement in the offense to the law enforcement officers who stopped and questioned him on January 24th of this year.

3

**Guidelines Calculations**

The Presentence Investigation Report details that Mr. Melgar has a total offense level of 17 and a Criminal History Category of I, yielding a guideline range of 24 to 30 months of imprisonment. PSIR ¶¶ 24, 28 and 45. Mr. Melgar has been in continuous custody since his arrest on the related state charge since January 24, 2021 – just over 8 months and 10 days at the time of the scheduled sentencing hearing on October 4, 2021.

**Section 3553(a) Factors:**

**1. Nature and Circumstances of the Offense**

The written factual proffer submitted by the government at the time of Mr. Melgar's guilty plea, ECF No. 35, and the PSIR summarize the basic facts of the offense, which are that on January 24, 2021, Mr. Melgar possessed an unregistered sawed-off shotgun in violation 26 U.S.C. §§5861(d) and 5871. There is no evidence that Mr. Salmeron ever discharged the firearm, threatened any one with it, or used it any nefarious way aside from possessing it.

**2. Characteristics of the Defendant**

    **a. Physical and Mental/Emotional Health**

Although Mr. Melgar appears relatively healthy physically, he suffers from asthma and is prescribed two medications to treat this condition. In addition, he is prescribed sleeping pills to help him sleep at night. PSR ¶¶ 37 and 38. Mr. Melgar also suffers from post-traumatic stress disorder (PTSD) because of witnessing the attempted murder of his mother in El Salvador when he was a child, and he

attended counseling for seven months as a result of this trauma. PSIR ¶38.

### b. Family history

After Mr. Melgar was abandoned by his father when he was a baby in El Salvador, he was raised by his mother and maternal grandmother. Mr. Melgar's mother later survived the shooting by her then-boyfriend and has a stable and supportive relationship with her son to this day. Mr. Melgar came to the United States when he was 15 years old. Though he got into trouble as a young juvenile, as outlined in the PSIR, as an adult his has tried to get on a positive and productive path.

He and his wife married in 2012. They now have four young children aged four months to eight years. Mr. Melgar is an active and involved father to his kids. He has worked hard to support his family. He has not been in any trouble in many years. Mr. Melgar has committed himself to giving his children a life he did not have when he was growing up.

### c. Work history

Mr. Melgar reports he has been steadily employed for the last five years as a roofer and at a local Chinese restaurant. PSIR ¶41.

### 3. Punishment

Possession of an unregistered firearm is a serious offense, however, this case is mitigated considerably by the fact that it appears to have been simply a crime of opportunity. Mr. Melgar did not use the firearm in any way – much less a violent way – other than simply possessing it. Mr. Melgar has otherwise stayed out of

5

trouble for many years and has worked hard to simply provide for his wife and children. The last eight months away from his wife and children have been very difficult for Mr. Melgar, and he does not plan to ever get in trouble again. Given the circumstances of the offense along with Mr. Melgar's family history, his solid work history, his lack of law enforcement contact in many years, and minimal criminal history, a sentence of 24 months is more than sufficient to address this sentencing factor.

### 4. Deterrence

The Sentencing Commission has noted there is no evidence that increases in sentences deter crime. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime and Justice: A Review of Research 28-29 (2006). Instead, research has generally shown that "increases in the *certainty* of punishment, as opposed to the *severity* of punishment, are more likely to produce deterrent benefits." *See* Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project (Nov. 2010) at 1, *available at* https://www.sentencingproject.org/publications/deterrence-in-criminal-justice-evaluating-certainty-vs-severity-of-punishment/, (noting a study that found that longer prison sentences achieved only a three percent reduction in recidivism). The Department of Justice acknowledges the facts that the certainty of being caught is a vastly more powerful deterrent to crime and that the severity of punishment is an

6

ineffective deterrent to crime. *See* National Institute of Justice, *Five Things About Deterrence*, (May 2016), available at https://www.ojp.gov/pdffiles1/nij/247350.pdf. Therefore, a sentence longer than 24 months is not needed to achieve the same amount of general deterrence and satisfies this sentencing factor.

## 5. Protection of the Public

A sentence of 24 months will adequately protect the public. Mr. Melgar is not a danger to the public. His crime was a crime of opportunity, and he is unlikely to find himself with a similar opportunity in the future. Since he married in 2012, Mr. Melgar's focus has been working and providing for his family. Thus, this factor is satisfied by a sentence of 24 months.

## 6. Rehabilitation

18 U.S.C. § 3553(a)(2)(D) requires the court to consider the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. However, imprisonment is "not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). This factor supports a sentence of 24 months.

## 7. Unwarranted Disparity

A sentence of 24 months is a sentence within the guidelines range. It will ensure just punishment to Mr. Melgar and does not create an unwarranted disparity.

## CONCLUSION

Mr. Melgar is eager to complete his sentence, address any outstanding issues when released, and be reunited with his family so he can continue being a father to his children and a husband to his wife.  A sentence of 24 months is sufficient but not greater than necessary in this case to punish Mr. Melgar for his involvement in this offense.

Respectfully submitted,

JORDIN  MELGAR SALMERON
By Counsel

Counsel:

s/Andrea Harris
Andrea Harris (VSB No. 37764)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Suite 106
Charlottesville, VA 22902
Tel (434) 220-3380
Andrea_Harris@fd.org

Carlos Moreno
300 East Main Street, Suite 218
Charlottesville, VA  22902
Carlos@imorenogroup.com

## CERTIFICATE OF SERVICE

I certify that on September 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to: counsel of record; and I certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/Andrea Harris
Asst. Federal Public Defender